IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA WEISS, | ) | Case No. 1:19-cv-2633 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, Jessica Weiss, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. § 1383(c)(3), and Local Rule 72.2(b).[1]  Because the Administrative Law Judge ("ALJ") failed to apply proper legal standards in explaining the weight given to Weiss's examining psychologist's opinion at Step Four, I recommend that the Commissioner's final decision denying Weiss's application for SSI be VACATED and that Weiss's case be REMANDED to the Commissioner for further consideration.

---

[1] Chief Judge Patricia A. Gaughan entered a differentiated case management order reflecting the automatic referral on November 12, 2019.  ECF Doc. 4.

## II.     Procedural History

Weiss applied for SSI on May 1, 2016.[2] (Tr. 15).[3] Weiss alleged that she became

disabled on April 12, 2016, due to a "[c]ognitive learning disability low [IQ]."  (Tr. 86, 158,

176).  The Social Security Administration denied Weiss's claim both initially and upon

reconsideration.  (Tr. 86-109).  Weiss requested an ALJ hearing.  (Tr. 122-28).  ALJ George

Roscoe heard Weiss's case on June 6, 2018 and denied the claim in a September 24, 2018

decision.  (Tr. 12-85).  On September 12, 2019, the Appeals Council denied further review,

rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).  On November

11, 2019, Weiss filed a complaint to obtain judicial review of the Commissioner's decision.  ECF

Doc. 1.

## III.    Evidence

### A.     Personal, Educational, and Vocational Evidence

Weiss was born on April 12, 1998, and she was 18 years old on the alleged onset date.

(Tr. 158, 164).  Weiss graduated from high school with a "regular diploma" in May 2016, and

she had an individualized education plan throughout grade school.  (Tr. 77, 221, 245, 249, 274).

Weiss also received technical training in hospitality and tourism while in school.  (Tr. 37).

Weiss also worked as a food prepper and cleaner at Burger King, but the ALJ determined that

her work did not qualify as substantial gainful activity and the VE testified that her work

included a special accommodation.  (Tr. 17, 40-43, 82).

---

[2] Weiss states in her brief that she applied for SSI on April 12, 2016, but the ALJ stated in his decision
that she had applied for SSI on May 1, 2016.  *Compare* ECF Doc. 13 at 2, *with* (Tr. 15).  Because Weiss
does not specifically argue that the erred in finding that she applied on May 1, 2016, any challenge to that
finding is forfeited.  *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (arguments not raised
in the merits brief before the magistrate judge are "waived"); *see also United States v. Olano*, 507 U.S.
725, 733 (1993) (waiver is intentional abandonment of an issue whereas forfeiture is the failure to timely
raise an issue).
[3] The administrative transcript is in ECF Doc. 11.

### B.    Relevant Medical Evidence

On November 17, 2015, Willoughby-Eastlake City Schools issued an "evaluation team report," assessing Weiss's cognitive disability.  (Tr. 218-226).   School psychologist Natalie Borrell assessed Weiss's general intelligence, academic skills, social-emotional function, adaptive skills, and communication based on a review of her school records and other data.  (Tr. 221-26, 249-54 (duplicate)).  Borrell noted that Weiss had a verbal comprehension index of 61, perceptual reasoning index of 55, working memory index of 54, processing speed index of 53, and full-scale IQ of 47, indicating functioning in the "lower extreme range" for all areas.  (Tr. 222).  Weiss also had "very low" reading comprehension and applied problems skills and "benefitted from having the prompts repeated."  (Tr. 222-23).  Her social-emotional functioning was in the "at risk" to "clinically significant" range across all domains, and she had "moderately low" adaptive behavior.  (Tr. 223-25).  Borrell noted that Weiss qualified for speech and language services in elementary school because she was delayed  in "grammar, basic concepts, and following directions," and she continued to have listening-comprehension, understanding, and judgment deficits in middle school.  (Tr. 225).  Borrell stated that Weiss would benefit from repetition of auditory information, and that regular accommodations including repetition and clarification would allow her to succeed.  (Tr. 225).

On December 2, 2015, Intervention specialist Janelle Puntel evaluated Weiss's academic skills.  (Tr. 227-30, 255-58 (duplicate)).  Among other things, Puntel noted that Weiss had "difficulty with comprehending text, answering higher level questions, problem solving, maintaining stamina, maintaining on-task behavior, and working independently."  (Tr. 228).  She struggled with self-regulation and interpersonal cognitive problem solving.  (Tr. 228).  Puntel

indicated that her educational accommodations included the need for extended time on tests and assignments, having her tests read aloud, and having directions repeated and clarified.  (Tr. 230).

In a May 2, 2016 IEP "summary of performance," Puntel noted that Weiss said she continued to struggle understanding complicated projects, needed projects broken down into single-step instructions, needed written assignments read to her, needed extended time for assignments.  (Tr. 312).

On October 25, 2016, Kendra Mathys, Psy.D., saw Weiss for a counseling intake evaluation.  (Tr. 331).  Dr. Mathys noted that Weiss was cooperative and attentive during the evaluation, had normal concentration and memory, and was oriented in all spheres.  (Tr. 331).  Weiss had slow intelligence, concrete abstraction, normal reality testing, and poor insight.  (Tr. 332).

### C.    Relevant Opinion Evidence

#### 1.    One-Time Treating Psychologist – Kendra Mathys, Psy.D.

On December 13, 2016, Dr. Mathys completed a mental status opinion form.  (Tr. 327-28).  Dr. Mathys stated that she had "very limited information" on Weiss because she had only seen her for an intake evaluation.  (Tr. 327).  Dr. Mathys noted that Weiss had reported concentration, memory, and learning problems that had persisted since childhood.  (Tr. 327-28).

#### 2.    Consultative Examiner – Jeff Rindsberg, Psy.D.

On September 16, 2016, Jeff Rindsberg, Psy.D., completed a "psychological evaluation" on referral from the Ohio Department of Disability Determination.  (Tr. 318-23).  Dr. Rindsberg noted that Weiss said she had a hard time understanding and remembering things and was not fast at things.  (Tr. 318).  She said that she as denied rehabilitation services because she was "too slow."  (Tr. 319).  She said focusing was hard and "sometimes her brain draws 'blanks.'"  (Tr.

4

319).  Weiss said she had not worked and that she believed she lacked the confidence to perform a job.  (Tr. 320).  Weiss said that she could go thrift shopping with her mother, did household chores, cleaned dishes, could make herself cereal or a burrito, and showered once a week.  (Tr. 320).

Dr. Rindsberg noted that "[t]here seemed to be no difficulty with [Weiss's] expressive or receptive language skills," she was "somewhat anxious," she had no delusions or overt psychosis, she had perfect recall for three words after a short delay, could recall two words (and a third word with prompting) after a long delay, and she was unable to spell "world" backwards.  (Tr. 321).  On the WAIS-IV intelligence test, Dr. Rindsberg found that Weiss had a full scale IQ of 65 (extremely low), verbal comprehension index of 70 (borderline), perceptual reasoning index of 67 (extremely low), working memory index of 66 (extremely low), and processing speed index of 79 (borderline).  (Tr. 323).  Dr. Rindsberg diagnosed Weiss with a mild intellectual disability with adaptive functioning problems and low intelligence.  (Tr. 323).  He stated that:

> Weiss may be able to understand, remember, and carry out instructions.  Yet, they would likely have to be explained to her several times and in simple terms.  She would have difficulty understanding them like most adults her age.
>
> Maintaining attention and concentration would be a problem as well.  Reminders and redirection would be necessary.
>
> * * *
>
> Handling pressure a work would be a problem for Ms. Weiss.  Dealing with stress and persevering would be a challenge due to her lower-than-average intelligence.

(Tr. 323).  Dr. Rindsberg also noted that Weiss scored a 6 out of 15 on the Rey 15-Item Memory Test, indicating that she might not have put forth adequate effort.  (Tr. 322).

### 3.  Consultative Examiner – Ryan Mekota, Psy.D.

On November 3, 2016, Ryan Mekota, Psy.D., evaluated Weiss's mental health functioning.  (Tr. 335-37, 339-41 (duplicate)).  Dr. Mekota noted that Weiss had been on a school IEP since kindergarten because she was "easily frustrated and struggled to understand or participate in classwork."  (Tr. 335).  Weiss's speech was within normal limits and her thought processes were concrete but linear.  (Tr. 336).  She had a full-scale IQ of 65, verbal comprehension index of 70, perceptual reasoning index of 69, working memory index of 63, and processing speed index of 79.  (Tr. 336).  Dr. Mekota noted that Weiss demonstrated extremely low overall intellectual functioning, nonverbal fluid reasoning, calculation, concentration, and mental manipulation.  (Tr. 336).  She had borderline verbal comprehension, verbal reasoning, and processing speed.  (Tr. 336).  Based on the evaluation, Dr. Mekota opined that Weiss's "level of cognition is likely to be a large barrier to independent living and employability, representative of a significant functional disability."  (Tr. 337).

### 4.      State Agency Consultants

On September 27, 2016, state agency psychology consultant Jaime Lai, Psy.D., evaluated Weiss's mental health function based on a review of the medical record and other evidence.  (Tr. 91-96).  Dr. Lai indicated that Weiss's intellectual disability caused moderate limitations in daily living activities, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace.  (Tr. 91).  Dr. Lai stated that, in evaluating Weiss's limitations, he gave Dr. Rindsberg's opinion "great weight because it [was] consistent with the medical evidence in file."  (Tr. 92).  Dr. Lai indicated that Weiss was "markedly limited" in her ability to understand and remember detailed instructions, but she was able to understand and remember instructions to complete simple routine tasks.  (Tr. 93).  She was markedly limited in her ability to carry out detailed instructions, moderately limited in her ability

to maintain attention and concentration for extended periods, moderately limited in her ability to complete a normal workday and workweek without psychologically-based interruptions, and moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 93).  Dr. Lai stated that Weiss could maintain adequate concentration, persistence, and pace to perform simple, routine tasks that did not require rapid pace, and she would benefit from supervisory support when first learning a new task.  (Tr. 93). Weiss was also moderately limited in responding appropriately to changes in the work setting. (Tr. 94).  Based on his evaluation, Dr. Lai determined that Weiss would be able to adjust to other work.  (Tr. 96).  On December 23, 2016, Katherine Reid, Psy.D., concurred with Dr. Lai's evaluation, except that Dr. Reid indicated that Weiss had "marked limitations" in maintaining concentration, persistence, or pace.  (Tr. 102-07).

### D. Third-Party Questionnaires

On May 31, 2018, Weiss's mother Christine Ross completed a third-party questionnaire. (Tr. 213-14).  Ross stated that Weiss had slow development growing up, forgot things easily, and couldn't figure out how to take a bus.  (Tr. 213).  Christine Ross said that Weiss had marked limitations in social functioning and personal functioning/self-care; extreme limitations in concentration, persistence, pace, acquiring information, and using information; and moderate limitations in completing tasks, interacting with others, and relating with others.  (Tr. 214).

On May 31, 2018, Weiss's stepfather Donald Ross also completed a third-party questionnaire.  (Tr. 215-16).  Mr. Ross said that Weiss forgot things and "[got] messed up too easily."  (Tr. 215).  He said that Weiss needed help filling out paperwork, needed someone else to drive her to work, and had difficulty with two or three step problems.  (Tr. 215).  Donald Ross indicated that Weiss had marked limitations in social functioning and personal functioning/self-

care; extreme limitations in concentration, persistence, pace, acquiring information, and using information; moderate limitations in interacting and relating with others; and mild limitations in completing tasks.  (Tr. 216).

### E.    Relevant Testimonial Evidence

Weiss testified at the ALJ hearing.  (Tr. 37- 55).  Weiss said that she went to a vocational resource center for help applying to jobs, but that she didn't get any of those jobs because she forgot to follow up with them.  (Tr. 38).  She said she could not figure out how to apply for jobs on her own.  (Tr. 39).  Weiss said she eventually got a job at burger king, where she did prep work.  (Tr. 40).  She worked 6 hours per day, five days per week, and she made $8.30 per hour.  (Tr. 41).  The prep work included cutting tomatoes, onions, pickles, and lettuce.  (Tr. 43).  She did not assemble sandwiches.  (Tr. 43).  She would also sweep the parking lot and take out trash.  (Tr. 44).  One manager tried to teach her how to work as a cashier, but she wasn't good at counting change.  (Tr. 44-45).  Weiss said that she hadn't made a mistake at work, except that she didn't know how to take out the middle part of tomatoes when she had first started working.  (Tr. 49).  Weiss said that she did not work more hours because she did not ask for more hours.  (Tr. 49).  Weiss said that she would work more hours if her manager asked her to do so.  (Tr. 53).

Weiss's mother also testified at the ALJ hearing.  (Tr. 55-75).  Ross[4] said that she had to help Weiss prepare her lunch, wake up on time, find her clothes, and get dressed.  (Tr. 56).  Ross drove Weiss to work because Weiss could not pass the written test to drive.  (Tr. 56-57).  Ross explained that Weiss did not recognize a "stop" sign, did not know that a stop sign required a driver to stop, and did not understand that someone turning left at an intersection without a protected turn light had to wait for oncoming traffic to pass.  (Tr. 58-59).  Ross said that, before

---

[4] The hearing transcript identifies Weiss's mother as "Ms. Weiss," *see* (Tr. 55), but the record shows that Weiss's mother is actually named Christine Ross, *see* (Tr. 213).

working at Burger King, Weiss had a test job at Goodwill and did well.  (Tr. 60).  Ross testified that Weiss could not take public transportation because she did not understand it.  (Tr. 63).  Ross said that Weiss could use the internet, had Facebook set up on her smart phone, made posts, and had trouble with spelling.  (Tr. 64-65).

Ross testified that Weiss could do laundry, but she had messed up the washing machine once because she didn't follow directions.  (Tr. 67).  Ross had to show Weiss how to do laundry three or four times before she could do it correctly.  (Tr. 67).  Ross said that Weiss would forget having conversations with her and that she couldn't remember her work schedule if she didn't have it written down.  (Tr. 68).  Weiss's household chores included keeping her room clean, and she was not allowed to use the stove to cook.  (Tr. 69).  Ross said that Weiss was motivated and tried hard, but she did not understand that she couldn't do everything.  (Tr. 71-73).

Michael Klein, a vocational expert ("VE") also testified at the hearing.  (Tr. 76-82).  The ALJ asked the VE whether an individual without any vocationally-relevant past work, with Weiss's age, and with no exertional limitations could work if she was "limited to performing very simple routine tasks in a low stress environment specifically no fast pace, strict quotas, or frequent duty changes."  (Tr. 77-78).  The VE said such an individual could work in such representative jobs as a cleaner (SVP-2, medium), stores laborer (SVP-2, medium), laundry bagger (SVP-1, light), and office cleaner (light).  (Tr. 78-79).  If the individual were additionally limited to being off task for 20 percent of the workday, she could not perform any work.  (Tr. 79-80).

Weiss's attorney asked how long it would take to learn SVP-2 jobs.  (Tr. 80).  The VE said that it would take 30 days to learn the jobs, and any additional time to learn the job would require a special accommodation.  (Tr. 80).  The VE also testified that not requiring a "fast food

worker" to perform the full range of duties expected with that position – such as by limiting the person to food prep – "might be" a special accommodation.  (Tr. 82).

## IV.    The ALJ's Decision

The ALJ's September 24, 2018, decision found that Weiss was not disabled from May 1, 2016, through the date of his decision and denied Weiss's claim for SSI.  (Tr. 15-29).  The ALJ determined that Weiss had the severe impairment of "mild intellectual disability," but that she did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Tr. 17-22).  The ALJ found that Weiss had the RFC to perform work at all exertional levels, but she was limited to "very simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes)."  (Tr. 22).  The ALJ explained that, in evaluating Weiss's RFC, he "considered all symptoms" in light of the medical and other evidence.  (Tr. 22).

Throughout the written decision, the ALJ provided significant discussion analyzing Weiss's ability to understand, remember, and apply information and her ability to concentrate, persist, and maintain pace.  *See* (Tr. 19-21, 23-27).  Specifically, the ALJ found that Weiss had a "moderate limitation" in understanding, remembering, and applying information based on her low IQ and school records showing Weiss had difficulty comprehending instructions and benefitted from repetition of auditory information.  (Tr. 19-20).  The ALJ found that Weiss had a "marked limitation" in concentrating, persisting, and maintaining pace based on: (1) school records showing difficulty persisting in tasks, a need for extra time, and repetition/clarification of instructions and directions; (2) Dr. Rindsberg's notes that Weiss reported difficulty focusing; and (3) Ross's testimony that Weiss required external prompts to stay on task.  (Tr. 21).  The ALJ also noted that Weiss's school records showed that she had weaknesses in comprehending

10

instructions, problem-solving, maintaining stamina, maintaining on-task behavior, and working independently.  (Tr. 24).

The ALJ stated that he gave Dr. Rindsberg's opinion "moderate weight" because "his opinion regarding the claimant's ability to perform work tasks is somewhat speculative."  (Tr. 25).  But the ALJ stated that Dr. Rindsberg's opinion was consistent with his finding that Weiss was "limited to very simple, routine tasks, in a low stress environment."  (Tr. 25).  The ALJ also said that he gave "great weight" to Dr. Lai's opinion, which found that Weiss "could perform work tasks that are fairly static, in a setting where changes are infrequent and can be easily explained beforehand."  (Tr. 26).

In summarizing his RFC finding, the ALJ stated:

School records establish that the claimant has an intellectual disability that has existed since childhood.  This impairment has resulted in the claimant having difficulty with understanding and remembering new and/or complex information. These records show that the claimant may require more time to complete tasks, or require repetition in instruction.  The most compelling evidence supporting the residual functional capacity finding is the claimant's testimony that she has been able to maintain employment at a fast food restaurant for a year.  Although her earnings are just below the level of substantial gainful activity, the claimant testified that she likes her job, and indicated that she believes that she would be capable of and willing to work more hours.  She reports that she has been told by her supervisors that she is doing a good job with the simple tasks that she performs.  The medical records and the claimant's testimony shows that the claimant is able to perform simple, routine tasks, in an environment without time pressure, frequent changes, or strict production quotas.

(Tr. 27).

Because the ALJ determined that Weiss had nonexertional limitations that reduced her ability to perform all or substantially all of the requirements of any particular exertional level, the ALJ relied on VE testimony to determine whether Weiss was able to perform any work in the national economy.  (Tr. 28-29).  Based on the VE's testimony, the ALJ determined that Weiss could perform such representative occupations as cleaner, store laborer, laundry bagger, and

11

office cleaner. (Tr. 28-29). Thus, the ALJ determined that Weiss was not disabled from May 1, 2016, through the date of his decision and denied her claim for SSI. (Tr. 29).

## V.    Law & Analysis

### A.    Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, No. 19-2441, 2020 U.S. App. LEXIS 25007, at *15, ___ F. App'x ___ (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the

claimant's age, education, and work experience, he can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.     RFC and Consultative Examiner Opinion

Weiss argues that the ALJ failed to adequately explain the weight given to Dr. Rindsberg's opinion and how the opinion was consistent with the ALJ's ultimate RFC assessment.  ECF Doc. 13 at 5-7.  Weiss asserts that the ALJ's statement – that Dr. Rindsberg's opinion regarding her ability to perform work tasks as "somewhat speculative" – was unclear because it failed to explain what parts of the opinion were credited or discounted in reaching the ultimate RFC finding.  ECF Doc. 13 at 6.  Weiss also contends that the RFC finding was not consistent with Dr. Rindsberg's opinion because it did not integrate Dr. Rindsberg's findings that she would need "reminders and redirection" and repeated explanations of instructions in simple terms.  ECF Doc. 13 at 6.  Weiss argues that the ALJ's omission of these limitations is especially perplexing because the ALJ also said the "records show that the claimant may require more time to complete tasks or require repetition in instruction."  ECF Doc. 13 at 6 & n.1.  And, because the VE testified that such limitations would preclude competitive work and require special accommodation, the ALJ's failure to adequately explain their absence from the RFC finding was not harmless.  ECF Doc. 13 at 6.

The Commissioner responds that the ALJ "properly and reasonably weighed Dr. Rindsberg's opinion."  ECF Doc. 15 at 5.  The Commissioner argues that the "somewhat

14

speculative" nature of Dr. Rindsberg's functional assessments was "a valid reason to discount [the opinion]," and that the ALJ could have also discounted Dr. Rindsberg's opinion because it was "vague and offered little or no functional assessment" of Weiss's abilities.  ECF Doc. 15 at 8-11.  Further, the Commissioner argues that the ALJ was not required to integrate all of the limitations from Dr. Rindsberg's opinion into the RFC.  ECF Doc. 15 at 8.  The Commissioner further asserts that Weiss did not show that the reminder, redirection, and repeated simple explanation limitations were necessary.  ECF Doc. 15 at 9.  Finally, the Commissioner asserts that Weiss cannot show that any error here was not harmless because she did not ask the VE specifically about reminders or redirection.[5]  ECF Doc. 15 at 10-11.

In her reply brief, Weiss argues that the Commissioner's references to the ALJ's decision to give "great weight" to Dr. Lai's and Dr. Reid's opinions also support her claim because both Dr. Lai and Dr. Reid gave Dr. Rindsberg's opinion "great weight."  ECF Doc. 17 at 2-3.  Further, Weiss asserts that, while the Commissioner correctly noted that the ALJ was not required to integrate all the limitations from Dr. Rindsberg's opinion into the RFC, he failed to build an accurate and logical bridge between the evidence and the result when the ALJ failed to integrate limitations from Dr. Rindsberg's opinion but nevertheless acknowledged that those limitations were supported by objective evidence in the record.  ECF Doc. 17 at 3-4.  Weiss also argues the court should disregard as an improper *post hoc* rationalization the Commissioner's argument that the ALJ could have discounted Dr. Rindsberg's opinion as vague or for offering little functional assessment.  ECF Doc. 17 at 3.

---

[5] The Commissioner also dedicates significant portions of his brief to defending the ALJ's decision to give "great weight" to Dr. Lai's and Dr. Reid's opinions.  *See* ECF Doc. 15 at 6-7, 10.  But both the Commissioner and Weiss agree that the ALJ's weighing of Dr. Lai's and Dr. Reid's opinions is not at issue in this case.  *See* ECF Doc. 15 at 5; ECF Doc. 17 at 1.  Thus, the Court also need not consider whether the ALJ properly weighed Dr. Lai's and Dr. Reid's opinions.

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). The RFC is an assessment of a claimant's ability to do work despite her impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 416.920(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

In conducting the Step Four analysis, an ALJ must weigh every medical opinion that the Social Security Administration receives. 20 C.F.R. § 416.927(c). "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Instead, an ALJ must weigh such opinions based on: (1) the examining relationship; (2) the degree to which supporting explanations consider pertinent evidence; (3) the opinion's consistency with the record as a whole; (4) the physician's specialization related to the medical issues discussed; and (5) any other factors that tend to support or contradict the medical opinion. *Id.*; 20 C.F.R. § 416.927(c). An ALJ does not need to articulate good reasons for rejecting a nontreating or nonexamining opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (declining to address whether an ALJ erred in failing to give good reasons for not accepting non-treating physicians' opinions). Nevertheless, an ALJ must provide sufficient explanation for the claimant and any reviewing court to be able to "trace the path of his reasoning." *Stacy v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 643 (6th Cir. 2013)

16

(holding that an ALJ erred when he stated that an examining physician's tests were invalid without explaining why they were invalid).  Even when an ALJ gives "great weight" to an opinion, the ALJ is not necessarily required to adopt all the limitations from that opinion.  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

I agree that the ALJ failed to adequately explain why he gave only "moderate weight" to Dr. Rindsberg's opinion and failed to adequately explain why he did not incorporate into the RFC Weiss's need for reminders, redirection, and repeated explanations of simple instructions. Because Dr. Rindsberg was not a treating physician, the ALJ was not required to give "good reasons" for discounting his opinion, and the ALJ certainly was not required to incorporate all of the limitations from Dr. Rindsberg's opinion into the RFC.  *See Gayheart*, 710 F.3d 365, 376; *Smith*, 482 F.3d at 876; *Reeves*, 618 F. App'x at 275.  Nevertheless, the ALJ was required to provide some explanation for the weight given to Dr. Rindsberg's opinion in a way that would allow Weiss and this court to understand his reasoning.  *Stacy*, 451 F. App'x at 519; *Brooks*, 531 F. App'x at 643.  And the ALJ's explanation – that Dr. Rindsberg's opinion was "somewhat speculative" – falls short because it did not explain *how* or *why* Dr. Rindsberg's opinion was "speculative."  *Brooks*, 531 F. App'x at 643; (Tr. 25).

If the court were to try to follow the ALJ's very limited explanation, it would have to begin with the ordinary meaning of "speculative": "1.a. based on guesses or ideas about what might happen or be true rather than on facts; b. tending to think about what might happen or be true; c. showing curiosity or uncertainty."  *Speculative*, MERRIAM-WEBSTER LEARNER'S DICTIONARY, *available at* https://www.learnersdictionary.com/definition/speculative (last visited Oct. 7, 2020); *see also Speculative*, OXFORD ENGLISH DICTIONARY, *available at* https://www.oed.com/view/Entry/ 186115?redirectedFrom =speculative#eid (last visited Oct. 6,

17

2020) (defining "speculative" as "based upon . . . theory in contrast to practical or positive knowledge" and "inclined to theorize or indulge in conjectural reasoning").  To some degree, *every* medical opinion could be considered "speculative" insofar as it seeks to predict what a claimant might or might not be able to do.  *See* 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements . . . that reflect judgments about . . . what you can still do despite impairments.").  Thus, the critical distinguishing factors that make an opinion discountable as "speculative" must be that: (1) the opinion was not made with reference to some fact or with personal knowledge regarding the claimant's condition; or (2) the opinion itself was stated with uncertainty.  The ALJ might have reasonably concluded that Dr. Rindsberg's opinion was stated with uncertainty based on Dr. Rindsberg's comments that the Rey 15-Item Memory Test results indicated that the validity of his intelligence testing was questionable; however, the ALJ expressly stated that he "fully accept[ed] the validity of the results of the intelligence testing."  (Tr. 25, 322).  Further, a review of the record – which shows that Dr. Rindsberg based his opinion on an interview, testing, and examination of Weiss – does not so clearly show that the opinion was made without reference to facts or without Dr. Rindsberg's personal knowledge that the court can easily trace why the ALJ believed the opinion was "speculative."  (Tr. 318-23); *Stacy*, 451 F. App'x at 519.

The ALJ's explanation was also insufficient to permit the court to understand why he did not incorporate into the RFC finding Dr. Rindsberg's limitations that Weiss would need reminders, redirection, and repeated explanation of simple instructions.  *Stacy*, 451 F. App'x at 519.  Had the ALJ explained – anywhere in his written decision – that such a limitation was not consistent with other evidence or was obviated by the other limitations in the RFC, the court could easily conclude that the ALJ adequately explained why he did not incorporate the limitation into the RFC.  *Stacy*, 451 F. App'x at 519; 20 C.F.R. § 416.927(c).  But the ALJ did

not provide such an explanation. *See generally* (Tr. 17-27). Instead, the ALJ compounded the confusion by stating that "records show that the claimant *may* require more time to complete tasks or require repetition in instruction" without saying that he saw the coin land on either side. (Tr. 27); *see also* (Tr. 25) (noting that Dr. Rindsberg opined that Weiss would need reminders, redirection, and repeated explanation of simple instructions). Thus, the ALJ's written decision failed "build an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877.

The court's review does not end simply because the ALJ made an error. "[A]n ALJ's procedural error is harmless if his ultimate decision is supported by substantial evidence <u>and</u> the error did not deprive the claimant of an important benefit or safeguard." *Johnson v. Astrue*, No. , 2010 U.S. Dist. LEXIS 137362, at *10 (N.D. Ohio, Dec. 3, 2010) (emphasis in original) (citing *Wilson*, 378 F.3d 541, 547 (6th Cir. 2004) (holding that an ALJ's violation of the rules for evaluating a medical source opinion deprived the claimant of an "important procedural safeguard")). And "the ALJ's failure to explain the weight given to the opinion of even a treating physician will be harmless error if the RFC she adopts incorporates the limitations indicated in the . . . physician's opinion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ's failure to adequately explain his reasons for discounting Dr. Rindsberg's opinion was not harmless. First, the ALJ's error was not harmless because it deprived Weiss of an important procedural safeguard – a written decision that builds an accurate and logical bridge between the evidence and the result. *Fleischer*, 774 F. Supp. 2d at 877; *Johnson*, 2010 U.S. Dist. LEXIS 137362, at *10; *Wilson*, 378 F.3d at 547. Second, the ALJ's error was not harmless because the ALJ's ultimate RFC finding – which omitted any limitation requiring reminders,

redirection, and repeated explanation of simple instructions – did not include all the limitations in Dr. Rindsberg's opinion. *Heston*, 245 F.3d at 536. Further, while the Commissioner asserts that other reasons not cited by the ALJ could have justified the ALJ's decision to discount Dr. Rindsberg's opinion, those other reasons are improper *post hoc* rationalizations that this court should not consider. *Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007); *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947). Simply put, whether or not the ALJ could have discounted Dr. Rindsberg's opinion on those grounds, he did not choose to do so. *See* (Tr. 25). Therefore, the court cannot conclude that the ALJ's failure to adequately explain the weight given to Dr. Rindsberg's opinion or the omission of Dr. Rindsberg's prescribed limitations from the RFC was harmless. *Johnson*, 2010 U.S. Dist. LEXIS 137362, at *10; *Wilson*, 378 F.3d at 547; *Heston*, 245 F.3d at 536.

Accordingly, because the ALJ failed to apply proper legal standards and because that failure was not harmless error, I recommend that the ALJ's decision denying Weiss's claim be vacated and that the case be remanded to the Commissioner for further consideration.

## VI. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Weiss's application for SSI be VACATED and that Weiss's case be REMANDED for further consideration.

Dated: October 16, 2020

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).